In The United States District Court For The Western District of Washington

Silverio Arenas, Jr., Ph.D.,
        **Plaintiff**

No. ___3:19-cv-05339-RJB_____

**v.**

Jay Inslee, Governor of the State of WA;
Bob Ferguson, Attorney General, State of
WA (OAG); Joel Sacks, Director, WA State
Dept. of Labor and Industries (L&I); et al;
        **Defendants**

Complaint For Violation Of Civil Rights
Under The First And Fourteenth Constitu-
tional Ammendments; Civil Rights Acts Of
1866, 1964, and 1991; And Other Rights
Under Federal Laws


**Jury Trial Demanded**


Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

# I. INTRODUCTION

1.1   Silverio Arenas, Jr., Ph.D., the Plaintiff, acting pro se, alleges that he has been the subject and victim of Constitutionally and legally violative, racially and ethnically discriminatory and relatedly oppressive actions, decisions, and practices by the defendants, who acted as individuals under the color of law, or otherwise, using the overwhelming power of the State to intentionally financially and emotionally, and in other ways personally impair and harm him.

1.2   The defendants have relatedly interfered with and denied him the ability and capacity to be financially stable and secure, productively and meaningfully practice his profession, adequately provide for his family, maintain his projected and planned retirement goals, and to continue to enjoy and assure for himself and his family a previously established and positively anticipated quality of life.

1.3   The defendants engaged in illegally deceptive, fraudulent, conspirational, and retaliatory practices in their discriminative adverse actions against the plaintiff.

1.4   Their actions began with a pre-textual arbitrary, uncalled-for, and egregious audit that resulted from a relatively minor clerical billing error, which was intentionally used to negatively affect the plaintiff, even after it was evidenced and they were informed that their actions were at first adverse in impact, and later adverse and unequal in treatment, and potentially harmful to the plaintiff as the only available Hispanic psychologist available to treat Hispanic injured workers, but they persisted.

1.5   Attempts by the plaintiff to justly resolve and conclude the matter were completely ignored and evaded, and actually relatedly concealed by the defendants.

1.6   The plaintiff was left bankrupt by the defendants' actions, and resultantly, he has not been able to obtain legal assistance, having to seek justice pro se, which has taken significant time away from clinical work, negatively affecting his practice.

1.7   Upon further challenge by the plaintiff as to their discriminative ways, the defendants resorted to conspiracy and then retaliation to maintain and cover-up their unlawful actions and they have since continued to engage in such up to the present.

1.8   To this day, the defendants have not at all responded to the plaintiff's exhaustive efforts to amicably settle the issues in process.

1.9   The plaintiff has been left and continues to be financially ruined, professionally restrained and impaired, and emotionally devastated.

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

2 of 23

1.10   Relief is being accordingly legally sought.

## II. JURISDICTION

2.1   The plaintiff has brought no other lawsuits in any Federal court in the United States.

2.2   This court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. 1331, 1332, 1343, and 1367, and venue is properly set in the Western District of Washington Federal Court pursuant to 28 U.S.C. 1391.

2.3   The present suit is directed at State officials acting as individuals under the color of law, or otherwise, and not at Federal officials (Bivens claim)

2.4   The claims upon which this suit is based occurred in this judicial district.

2.5   The plaintiff is, to the best of his knowledge, informed and believes, and on that basis alleges, that each of the named defendants reside, and acted as noted in the present proceedings from a base, in this judicial district, County of Thurston.

2.6   The plaintiff's damages occurred and were suffered in this judicial district, County of Skagit.

2.7   It is thereby pleaded that the most reasonable venue for adjudication of the present proceedings is the Seattle location of the Court for this judicial district.

## III. PARTIES

3.1   The Plaintiff, Silverio Arenas, Jr., Ph.D. is a Hispanic, bilingual/bicultural (Spanish-English/Chicano) licensed psychologist in the State of Washington who has been treating Hispanic injured workers through L&I, as a small business independent contracted provider for more than 30 years.

3.2   Defendant Jay Inslee as Governor of the State of Washington oversees and is ultimately responsible for all the actions and decisions of State agencies and their respective employed and otherwise associated agents in their official capacities and as individuals acting under the color of law, including the Department of Labor and Industries (L&I).

3.3   Defendant Bob Ferguson, as Attorney General of the State of Washington is ultimately responsible for the actions and decisions of the Office of the Attorney General (OAG) and how it and its agents legally advice and act on behalf of the employed and

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

3 of 23

otherwise associated agents of his office and those of L&I in their official capacities and as individuals acting under the color law, as regards their actions and decisions.

3.4    Defendant Joel Sacks, as Director of L&I, is penultimately responsible for the actions and decisions of its employed and associated agents, including consultants and contracted entities, in their official capacities and as individuals acting under the color of law, as to their actions and decisions.

3.5    The other defendants charged in the present pleadings are employed or associated agents of L&I, OAG, or other noted entities, and have acted in their official capacities and as individuals under the color of law.

3.6    Although all defendants to the present proceedings are charged as individuals who acted under the color law, and are being held accountable accordingly, Governor Inslee, Attorney General Ferguson and Director Sacks are especially so considered, as they were early-on fully and substantively informed of the issues and negative consequences inflicted upon the plaintiff, having chosen to do and doing nothing to prevent, rescind, or mitigate the asserted damages and associated emotional pain and suffering to the plaintiff, his family, and his clients.

3.7    Although the Washington State Department of Labor and Industries (L&I), the Office of the Attorney General (OAG), the Office of the Governor (OG), Attorney General Bob Ferguson, and Governor Jay Inslee, cannot, as far as the plaintiff has become aware of, be supposedly held accountable as State actors for some of the asserted violations and damages as declared in the present legal proceeding, due to State granted exclusive/sovereign immunities, allowing them to violate the plaintiff's Constitutional Rights, in spite of their having been provided with and/or having constructive, imputed, and actual knowledge of and direct involvement in the causes of action asserted, and relatedly having had the power to have prevented the adverse actions against Dr. Arenas but not having done so, they are cited nonetheless symbolically but not procedurally as defendants acting in their official capacities accordingly.  In terms of violating the plaintiff's constitutional rights and the laws as otherwise asserted, including for causing and knowingly not preventing outrageous emotional pain and suffering against Dr. Arenas, and through other transgressions as allowed for prosecution legally, they are however, along with others, held accountable accordingly as defendants who have wrongfully acted under the color of law as individuals, all which are preliminarily listed as follows:

3.8    1. Jay Inslee, Governor of WA State;
       2. Bob Ferguson, Attorney General of WA State (OAG);
       3. Joel Sacks, Director, WA State Dept. of Labor and Industries (L&I);

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

4 of 23

4. Victor Velasquez, Intern and Case Manager, L&I;
5. Maggie Leland, Legislative Liaison, L&I;
6. Tonya Morgan, CPC Auditor, L&I;
7. Gary Franklin, MD; Medical Director, L&I;
8. Lee Glass, MD, Associate Medical Director, L&I;
9. Stephen Thielke, MD, Medical Consultant, L&I;
10. Jean des Rochers, RN, Nurse Consultant, L&I;
11. Ernie LaPalm, Deputy Director, L&I;
12. Dan Johnston, Director, L&I Office of Internal Audit and Civil Rights;
13. Montana Salvoni, Lead Civil Rights Investigator, L&I;
14. Shelley Mortinson, Deputy Attorney General, OAG;
15. Angela Emter, L&I Auditor;
16. Victoria Kennedy, Assistant Director, L&I Insurance Services;
17. Gregory G. Silvey, Section Chief, Early Resolution/Investigation (OAG);
18. Lisa Gilman, Sr. Investigator/Analyst, OAG;
19. Mark Koenen, MD, Contracted Medical Examiner, L&I;
20. Others to be named upon further inquiry/discovery.

3.9   All of the noted defendants in the present legal proceedings were timely educated and otherwise informed about, and could have prevented or justly concluded the presently submitted causes of action, but acted with calloused, arrogant, and calculated deliberate indifference, misusing the overwhelming power of the State as individuals accordingly.

3.10   All of the noted defendants in the present legal proceedings are believed by the plaintiff to reside in Thurston County, and to have acted from their places of employment or contracted positions in that county.

3.11   The plaintiff resides, suffered damages, and was adversely affected in, and the alleged causes of action in the present proceedings occurred in Skagit County.

IV. FACTS

4.1   Silverio Arenas, Jr., Ph.D., the plaintiff, is a Hispanic, bilingual/bicultural (Spanish-English/Chicano) licensed psychologist in the State of Washington who has been treating Hispanic injured workers through the Washington State Department of Labor and Industries (L&I), the workers compensation program in the State, otherwise interchangeably referred to in the present pleadings as defendants, the term which includes other further noted colluding and offending entities and individuals, as an independent contracted provider for more than 30 years. Over that period of time, there have been few, if any, Hispanic, Spanish-speaking psychologists primarily treating

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

5 of 23

this most vulnerable and underserved population.  Dr. Arenas has driven for years across the State at his own time and expense for related costs and clinic space, to serve Hispanic injured workers who have had no access to bilingual Hispanic psychologists and whose limited resources have not allowed them to travel to services relatedly, and given that L&I does not pay or reimburse them for their costs. L&I and Dr. Arenas have traditionally had an adversarial relationship due to his cross-cultural advocative approach to the treatment of Hispanic injured workers, and because he has regularly challenged what he believes is their established racially/ethnically discriminative medico-legal system.  Over 15 years ago, in collaboration with L&I, and Dr. Lee Glass, Associate Medical Director, Dr. Arenas developed and began utilizing a customized billing/charting procedure to bill for and document his services delivery, as no standardized or prototypical form, or clearly stipulated procedures have existed in the L&I codified guidelines and requirements for such.

4.2    On 9-5-14, Dr. Arenas was served by L&I with a surreptitiously compiled, and completed audit, dated 9-3-14, of his billing/chart notes, through Tonya Morgan, CPC, Medical Coding Compliance Auditor, Provider Credentialing and Compliance Unit, in which $201,791.86 was demanded for repayment, with $61.91 interest per day being charged on top of that until full reimbursement was to have been completed.  The period of audit was for paid services between July 1, 2012 through June 13, 2014, with 1,812 entries (billings) cited.  It was alleged by the defendants that Dr. Arenas had failed to comply with L&I billing and charting documentation guidelines and procedures.  The audit action did not allege fraud or misrepresentation, or services not having been provided, nor that he had billed for more than he should have or was entitled to.  In spite of that, the term L&I used was that Dr. Arenas had been "overpaid," when in actuality total repayment was demanded, even though services were delivered.  No specific information was provided as to the reasons why the audit was initiated or who else was involved in the matter.  There was no invitation for cross-communication or opportunity to mediate, mitigate, or otherwise address the matter before the audit action was initiated, completed, and served.  Dr. Arenas was de facto arbitrarily investigated, charged, tried, and found guilty and liable, in secret under the color of law, in absentia and without his involvement, input, or awareness, with the only option then being a formal appeal after the fact to the Board of Industrial Insurance Appeals (BIIA).

4.3    L&I's action was intensely acutely emotionally stressful and unsettling for Dr. Arenas, given the nature of his professional duties of caring for emotionally affected and vulnerable patients, many who were potentially suicidal and highly dysfunctional, and because he was already in a precariously vulnerable financial and professional position, having recently established, ironically with the encouragement and support of regional L&I officials, the State's ever only bilingual/bicultural Hispanic-focused medical-psychological injured worker clinic.  The excessive amount of repayment being

Arenas v. Inslee, et al. - Civil Rights Complaint                                        6 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

demanded and high number of billings involved were egregiously overwhelming and required that a considerable amount of professional and personal time and effort, as well as resources, be redirected from Dr. Arenas' clinical care of patients and life activities to address these matters.  Services to the Hispanic injured worker community, and other injured workers in general, were and have since been severely interrupted, as was Dr. Arenas' related professional compensation therefrom.

4.4     At great financial and professional duress and sacrifice, Dr. Arenas was forced to address L&I's arbitrary and overwhelming adverse audit action by acquiring legal counsel and modifying and suspending professional services, in order to enjoin the defendants to amicably and cooperatively resolve and settle the matter.  Over the next 16 months, L&I was then fully educated and informed by the plaintiff of the unnecessity and excessiveness of their demand, and the negative impact and dire consequences to Dr. Arenas' financial and professional statuses, and the interruptive effect such would have on his practice and services accessibility and availability for Hispanic injured workers. That the alleged billing/charting compliance deficiencies attributed to Dr. Arenas were in actuality common and usual practice by most psychologists and psychiatrists, was also clearly communicated to L&I, with over 15 redacted examples of other such providers, all non-Hispanics, billing/charting forms submitted by the plaintiff as evidence.  L&I was also reminded that their case managers review all submitted billings and chart notes routinely for correctness before authorizing payments accordingly if they are in compliance, or reject them with explanations and remedial instructions otherwise.  For over 15 years, Dr. Arenas' submitted charting/billing notes were accepted as completed and paid for by L&I case managers without major complaints.  The form and manner in which the notes were constructed and submitted were the same as now declared to be unsuitable, and as already noted, they were shown to be consistent with those routinely turned-in by other psychologists and psychiatrists, and paid for as well, this across many clients served and case managers involved.  It was also early-on pointed-out and emphasized clearly to the defendants that Dr. Arenas is and has been a scarce, if not the only available linguistically and culturally-relevant community resource serving a long-neglected and underserved Hispanic injured worker community and that the actions in play against him would severely erode or eliminate that.  In spite of this information being communicated, L&I failed to respond, deflected from, and actually ignored and effectively concealed these attempts to mutually cooperatively settle or even mitigate the audit action.

4.5     Pre-hearing mediation efforts via phone, on 5-22-15, 6-12-15, and 7-1-15, through the Board of Industrial Insurance Appeals (BIIA), between L&I and its legal representative, the Washington State Office of the Attorney General (OAG), and Dr. Arenas and his legal representative, proved fruitless and pointless.  During those phone conferences, the defendants were informed that Dr. Arenas was in a financial hardship due to their unfair

Arenas v. Inslee, et al. - Civil Rights Complaint                                                    7 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

and exorbitant demands, and that he was heading towards bankruptcy unless their adverse actions were stopped and retracted or mitigated.  No such mediation was offered, and in actuality, the defendants appeared to become more firmly resolved in their efforts to negatively impact the plaintiff.  Dr. Arenas' original attorney was eventually dismissed for failure to timely respond to several BIIA requests and required actions, and for other reasons, including the plaintiff being unable to financially continue with his services and because the attorney had revealed having a friendship with the Assistant Attorney General representing L&I.  A pro-bono attorney was unexpectedly fortunately thereafter acquired to help in Dr. Arenas' legal defense. Coming late to the case with new legal counsel, however, placed the plaintiff at a significant disadvantage, leaving his appeal process at the mercy of the defendants, with negative consequences.  Issues of racial disparity, unavailability of related Hispanic providers and services, and the negative impact to the plaintiff surrounding the matter at hand were not allowed by L&I and the OAG for consideration in prehearing phone meetings.  In a deposition hearing later, the BIIA judge also sided with L&I and the OAG, as represented by Shelley Mortinson, and denied Dr. Arenas' petitions to address those issues, to include several witnesses (1-15-16) to support his position, and to include a Estopple defense factor (6-14-16).  The only issues allowed for discussion were solely restricted to those of the bureaucratic audit action and its alleged documentation non-compliance, and the monies demanded for repayment, or in L&I's words "overpayment."  Again, discriminatory adverse impact issues and consequences were excluded from consideration.

4.6    Basically, L&I evidenced its racially/culturally insensitive and discriminatory nature by their position, and by their unapproachable and persistent efforts to recover almost a quarter million dollars with accrued and continuing interest, from a minority small business independent contracted Hispanic psychologist, while refusing to recognize that his non-Hispanic colleagues were not being held similarly accountable for submitting their billing/charting forms like he had or that he had been doing so for many years without question.  That Dr. Arenas has been and continues to be the only available bilingual/bicultural Hispanic provider to serve Hispanic injured workers was completely ignored.  Dr. Arenas believes he was egregiously arbitrarily being unfairly forced to pay back every penny for having delivered bilingual/bicultural psychological treatment to Hispanic injured workers, in effect completely devaluing and dismissing his services and their only access to culturally and linguistically-relevant care available to them in the whole State.  The defendants, cloaking themselves and acting under the color of law, pre-textually initiated on 9-5-14 an arbitrary and oppressive audit that was intentionally and deliberately directed at discriminatively and maliciously harming him professionally and personally.  Essentially, they used their audit as a ruse to restrain and impair Dr. Arenas' practice, in an egregious and disingenuous ethnically/racially unfair manner. Such adverse action, although initially believed by the plaintiff to involve only

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

8 of 23

unforeseen and possibly unintentional adverse impact, increasingly clearly became one of adverse treatment by the defendants after Dr. Arenas became aware of and then began complaining of being intentionally disparately discriminated against and harmed emotionally, and fully informing them thereof on 1-20-16, and finally suspecting and then discovering that he was actually unequally being racially/ethnically discriminatively treated, and otherwise Constitutionally relatedly violated on or around 4-22-16 and conclusively after 9-4-16, which were noted in faxed letters to L&I Director Joel Sacks on those dates respectively and otherwise.

4.7    While at first the defendants' adverse audit action appeared to have begun in a "routine" but negligently misinformed and reckless, as well as possibly prejudiced manner, over time it became evident that L&I had deliberately intended it to be, or transformed it into a vehicle for the defendants to evade, ignore, distract from, obstruct, impede, conceal, and otherwise interfere with Dr. Arenas' ability to become aware and informed of and act upon to defend and assert his civil rights. The defendants knew, should have known, and were informed, that by utilizing the full power of the State in procedurally preoccupying, financially overwhelming, bankrupting, and emotionally terrifying Dr. Arenas, and consistently completely ignoring or not even acknowledging his pleas for just and non-discriminatory consideration, that such would relatedly emotionally immobilize, hinder, and prevent him from becoming fully aware and cognizant of their violation of his civil rights, and from accordingly affordably obtaining and securing timely and adequate legal counsel or knowledge, in an effort to avoid responsibility and toll relevant statutes of limitations.

4.8    The defendants by their intentional actions, and with full constructive and otherwise informed knowledge, discriminated racially/ethnically against Dr. Arenas by egregiously targeting him specifically for alleged procedural billing/charting non-compliance, and not his non-Hispanic colleagues who were evidentially shown to usually and customarily engage in the same practice. Evidence was presented to the defendants relatedly, but it was not addressed and they persisted in their adverse audit action against Dr. Arenas. Up to most recently, over four years since their adverse audit against Dr. Arenas, and since up to the present, and especially after 9-4-16 upon full discovery by the plaintiff, the defendants have willfully and with complete knowledge of their discriminatory and oppressive actions, continued to violate his Constitutional rights under the Fourteenth Amendment's guarantees of procedural due process and to equal protection and treatment under the law, compared to is non-Hispanic colleagues, and have also retaliated against him for complaining thereof, in violation of the First Amendment, freedom of speech, and in violation of the Civil Rights Acts of 1866, 1964, and 1991.

4.9    The defendants, by their deliberate actions or inaction, initially and thereafter, also intentionally colluded and conspired and thereby interfered with Dr. Arenas' First

Arenas v. Inslee, et al. - Civil Rights Complaint                                    9 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

Amendment constitutional right to properly petition the State government for a redress of grievances, denying him full exercise of his civil rights.  In response to the defendants discriminatory and oppressive actions, Dr. Arenas verbally expressed his outrage publicly and in writing, to the Hispanic injured worker community and general public, and in letters to the defendants early on, including Governor Inslee, Attorney General Ferguson, and Director Sacks, and most recently on 12-7-17, 1-15-18, and 4-13-18.  His freedoms of speech and of the press were then and have since been violated by the defendants in retaliating against him by creating, promoting, and otherwise establishing and enabling a discriminative and retaliatory animus within their ranks, and by extension to allied colluders, and by referring him to his state professional licensing board on 3-1-18, with unsupported allegations, in violation of established statutes against such towards individuals who complain of discrimination and engage in whistle-blowing activity with sincere and just intent.  Dr. Arenas remained under investigation for almost a year by the Washington State Department of Health, his licensing board, for a complaint of unprofessional conduct made by the defendants, specifically by the OAG, but the case was dropped on 11-20-18, without disciplinary action.  Most recently, on 1-9-19, the plaintiff received a letter from the United States Department of Health and Human Services, Office of the Secretary, Office of Civil Rights, stating that the defendants, specifically Lisa Gilman, Senior Investigator/Analyst, from the Washington State Attorney General of Washington (OAG), had also filed a federal complaint against Dr. Arenas, on 2-2-18, apparently in tandem with their retaliatory complaint to the plaintiff's licensing board, that he failed to safeguard protected health information.  That agency determined there was no violation and closed the case without further complaints of being discriminated against by the defendants, and for being retaliated against for doing so, were used against him by complaining to a federal civil rights agency, all while to the present day totally failing to acknowledge or even responded at all to Dr. Arenas' own prior and ongoing assertions of being so affected.  The plaintiff did not know the extent to which he had been subjected to retaliatory action by the defendants, and to what extent that still persists, which has worsened his fear of bureaucratic terrorization and increased his emotional pain and suffering relatedly.  The actions were and persist to be deliberate and maliciously retaliatory, and continuously violative of the plaintiff's constitutionally guaranteed federal civil rights as specifically asserted in the present declaration.

4.10     The defendants since 9-3-14 and upon conclusive discovery thereof on 4-22-16 and especially after full discovery as on 9-4-16, by the plaintiff, were and have been fully and completely educated and informed, or should have been aware or known, of their adverse discriminatory, although initially in terms of impact, actions against the plaintiff and the Hispanic community, and they nonetheless acted and continue to act upon that knowledge and have persisted accordingly.  They did not have to do that.  Diligent and exhaustive efforts by the plaintiff to have the defendants respond to pleas for amical

Arenas v. Inslee, et al. - Civil Rights Complaint                                                    10 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

consideration and just resolution of the matters at hand were and have been up to the present completely ignored.  The established L&I bureaucratic legal process, the Board of Industrial Insurance Appeals (BIIA), proved to be restrictively unresponsive to the plight of the plaintiff as well.  Financial restraints and poor legal representation further limited Dr. Arenas' search for justice.  The Hispanic injured worker and larger communities, however, rose-up and challenged the defendants' by now clearly discriminatory actions against the plaintiff and themselves.  In response, the defendants established a civil rights department within L&I.  On 1-20-16, in a letter to L&I Director Joel Sacks and the Attorney General's office, Dr. Arenas generally asserted that the defendants had been subjecting him to professionally and financially damaging consequences, as well as related emotional pain and suffering.  Up to that point, it had been hoped that L&I would have mutually and justly address the issues involved, in terms of adverse actions, but this had not happened.  There was, and has since been no direct or even minimally accountable response to that correspondence.  Actually, it was eventually finally revealed by agents within L&I that the defendants had been with full knowledge and calculated indifference intentionally ignoring and evading the plaintiff's concerns relatedly.

4.11    The establishment of the civil rights unit by L&I provided an alternative venue for the plaintiff to seek consideration of his concerns and grievances.  The plaintiff filed a civil rights complaint thereby with encouraged support from Dan Johnston, Director of the L&I Civil Rights Unit, and Assistant Director of Internal Audit Division, and Montana Salvoni, Lead Investigator for the L&I Civil Rights Unit.  In response, these agents, specifically with L&I Deputy Director Ernie La Palm directly conducting the proceedings, arranged a mediation with Dr. Arenas, which was held on 9-4-16.  Attending that meeting was Mr. LaPalm, Mr. Johnston, Ms. Salvoni, all from L&I, and two paid mediators secured and paid for by L&I, and the plaintiff by himself.  Controlled by the defendants, and with the plaintiff under severe emotional duress, the audit matter was settled.  Only the issue involving the bureaucratic audit process and the exorbitant amount of money being demanded for repayment were allowed for consideration and settled in the mediation.  The racial/ethnic disparate and unequal treatment and discrimination issues asserted by Dr. Arenas were not at all addressed or discussed nor resolved, or dismissed by him.  Severe and irreversible harm and deprivations had already occurred and manifested in the plaintiff financially, vocationally and professionally, as well as emotionally, and in terms of quality of life by that time.  The defendants agreed at the mediation on 9-4-16, however, that they would cooperatively interact with the plaintiff to improve their relationship, work together to help him to better address and navigate the bureaucratic process, and verbally, to address making Dr. Arenas "whole again," all in the service of a mutual effort to better serve the Hispanic injured worker community.  The plaintiff took the defendants at their word.  Unfortunately, the agreed-to interaction and collaboration did not occur.  The

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

11 of 23

defendants failed to comply with their agreed-to remedial actions, and continued to hold the plaintiff to unequal and discriminative requirements and constraints, with no acknowledgement at all of their role in such issues, or of the impaired, damaged, and functionally harmed status he was in resultantly, and no bureaucratic or clerical assistance was extended and provided as promised. Shortly after the mediation event, once previously unseen or unknown documents were made available to the plaintiff, and after specific information was obtained from L&I's own civil rights unit, in conversations with Dan Johnston and Montana Salvoni, it became clear that the defendants had been involved all along in establishing a discriminative, retaliatory, and maliciously harassing animus against Dr. Arenas within their ranks and amongst colluding entities.

4.12   It was finally conclusively discovered after the 9-4-16 mediation meeting that the initiating incident for launching the audit against Dr. Arenas was based on a simple, easily addressable transposition mistake in billing (CPT treatment code 90834 was entered in the service cost area of the billing sheet as $90,834.00, twice) that was obviously erroneous given the excessive amounts billed ($181,668 for 2 thirty- minute sessions). Payment was not actually made for that billing. No attempt was made to clarify the mistake with the plaintiff. Dr. Arenas was immediately referred for a fraud investigation, but that was turned-down by the corresponding L&I unit. Having failed to secure a fraud investigation, a unilateral decision was then made to audit the plaintiff. A case management trainee, Victor Velasquez, apparently took it upon himself to initiate the defendant's adverse action, and declared to his superiors that the plaintiff's obvious error "was no mistake." Dr. Arenas was then discussed within the L&I system by those individuals already noted, as well as by Stephan Thielke, MD; Jean des Roches, RN; Angela Empter, Gary Franklin, MD; Lee Glass, MD and Victoria Kennedy, with an apparent interest in finding a reason to negatively affect the plaintiff. A malicious attempt was made, according to information obtained, to put the plaintiff in a questionable light towards further fraud investigation by stating that "he has a father who is also a psychologist," which is false. Further information was obtained that L&I had become "divided" within its own ranks between those defendants who had become advocates for a reasonable resolution with the plaintiff, and those who wanted to pursue his complete ruination, de-licensure, and expulsion from contracted service. Some of the plaintiff's correspondence to L&I challenging their racially discriminative practices were, according to Mr. Johnston and Ms. Salvoni, circulated within L&I headquarters for employees to read, which they said had fueled resentment and animosity towards him. Individuals who wanted to extremely damagingly affect the plaintiff were reported to have begun referring to Dr. Arenas as "Osama bin Laden," basically slandering him as being a terrorist, in conversations and also at official administrative meetings. This was said by Johnston and Salvoni to be because of what the plaintiff had been saying and writing about L&I's discriminatory and oppressive

Arenas v. Inslee, et al. - Civil Rights Complaint                    12 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

ways.  According to Johnston and Salvoni, the L&I civil rights agents already noted, the initiating individual to such slanderous reference and a prime mover of the opposition to Dr. Arenas was Maggie Leland, the L&I Legislative Liaison, with Joel Sacks, Director; Ernie LaPalm, Deputy Director; Vickie Kennedy, Assistant Director, Insurance Services, Gary Franklin, MD, L&I Director, Lee Glass, MD, L&I Assistant Medical Director, themselves, and  with other L&I officials also reportedly having been present in some if not most of those meetings.  Those revealed actions have explained to the plaintiff the defendants' failure to ever acknowledge or even mention any references to unequal treatment or discrimination, or even to include and allow such in the early-on BIIA proceedings and at the 9-4-16 mediation effort.

4.13    Basically, the plaintiff believes that the defendants, by their actions or inaction, in a cabal manner, conspired to not responsibly address those issues using an evasive strategy of ignoring Dr. Arenas' assertions in order to conceal their oppressive and discriminative actions, and to further subject him to the many violations and deprivations alleged in the present legal proceedings.  The defendants were discovered to have taken a minor issue and pretextually used it to negatively affect the plaintiff in an egregious, unnecessary, and destructively impactful manner, which they eventually were informed was unequal in treatment, discriminatory, intentionally and deliberately, and which they, with full knowledge thereof, then conspired to and set-out to hide or neutralize by not acknowledging, dismissing, or detracting from their adverse actions. They arbitrarily abused the powers of the State to intentionally and deliberately drive the plaintiff towards bankruptcy and vocational/professional ruination, severe emotional pain and suffering, and reduced services availability to the Hispanic injured worker community, as well as to possibly toll relevant statutes of limitations for legal response.  Shortly before and also after, on or about 7-12-16, the plaintiff asked for and was given the noted mediation meeting on 9-4-16 with L&I Deputy Director Ernie La Palm in which Dan Johnston and Montana Salvoni were present. The latter two individuals met several times with the plaintiff and also with Dr. Arenas' wife and son, before and after the mediation meetings, during which they expounded about L&I's bureaucratic "toxic atmosphere" and discriminative practices and they described their employer agency as being "the Death Star," like the evil spaceship in a recent Star Wars movie, and warned the plaintiff that L&I was a unlimitedly powerful and politically well-connected entity that could extremely further harm the plaintiff professionally and personally, and that their agents, and others supporting them, were basically untouchable and immune to being challenged or rebuked.  Joel Sacks, Gary Franklin, and other top-level L&I officers, and the Governor and Attorney General were said to be beyond reproach and unassailable.

4.14    That L&I and the OAG were extremely powerful, with unlimited financial, legal, and technical resources, and political connections, which could overwhelm any challenger

Arenas v. Inslee, et al. - Civil Rights Complaint                                    13 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

financially and professionally, drag things out forever, and ruin their careers and lives without hesitation was conveyed by Mr. Johnston and Ms. Salvoni to Dr. Arenas and his family. The plaintiff was clearly cautioned and warned that to continue to speak out and assert himself in terms of any continued "controversial" or "offensive" activities, including speaking-out against L&I and encouraging others to do the same or protest, would not lead to any positive outcome and actually would further damage the plaintiff professionally and personally. The message understood was that the plaintiff should not be complaining of being discriminated against or saying that L&I and the defendants were racist or prejudiced. They did say, however that the matter at had "raised the conscience" of certain individuals within L&I, that could eventually lead to relevant changes accordingly. Generally, the plaintiff was exhorted, enticed, enjoined, and the advice strongly imparted by Mr. Johnston the night before the mediation meeting. The implication conveyed at that point was that L&I was wanting to work with the plaintiff to suspend the audit action they had put into play, and willing to mutually assist and work with him to better serve Hispanic injured workers, and the plaintiff believed, to also "make him whole" again. As has been already noted, the mediation effort did not allow for any discussion of discrimination or unequal treatment against the plaintiff, nor was it honored as to any substantive assistance as agreed-to verbally. These actions by the defendants are believed by the client to have been premeditated, intentional, and deliberate, and to have amounted to, along with other actions, a conspiracy to interfere with the plaintiff's civil rights.

4.15   On 10-26-17, after the mediated promised assistance to help the client improve his services did not materialize, and the defendants continued to negatively discriminatively impact the plaintiff, he submitted a Tort of Outrage against the defendants for intentional infliction of emotional pain and suffering to the established State Department of Risk Management (DRM) for required review before it could be filed in State court. The plaintiff had come to conclusively realize that L&I had mediated in bad faith on 9-4-16, as they failed to support and work with Dr. Arenas to improve and enhance his practice, and especially to help "make him whole." That the defendants' tortious actions against the plaintiff were outrageous and an affront to the conscience of the Hispanic injured worker community was attested-to by a petition from them declaring so, with over 150 signatures. The proposed action was questionably, and the plaintiff believes in a colluding manner referred by DRM for review and legal opinion to the Office of the Attorney General (OAG), one of the defendants in that legal action and also in the present, for investigation. This agency was disingenuously allowed to review an action against itself for an "objective assessment" as to its merits. By statute, sixty days notice has to be given to the State in any anticipated legal proceedings against it, but the OAG stated in a letter to the plaintiff that 60-80 days would be needed to review the matter. Not unsurprisingly, they concluded, with Gregory G. Silvey responding from the OAG, on 5-2-18, over 180 days later, that the allegations in the

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

14 of 23

plaintiff's Tort were not supported, and dismissed them.  The OAG fraudulently it seems, directly rewrote and misrepresented to their liking the explicit cause of action asserted in the Plaintiff's tort in their dismissal.  The cause of action forwarded by the plaintiff solely involved intentional infliction of emotional pain and suffering, but the OAG, in their dismissal, revised and re-wrote the plaintiff's pleading to be that of "using audits as a tool to selectively and repressively retaliate against you based on racial bias in order to suppress your provision of services to the Hispanic injured workers community," which was not what was asserted, but apparently fabricated by the defendants in order to deny after Dr. Arenas his actual stated cause of action in order to prevent him from full participation in exercising his constitutional civil rights.

4.16   Since 9-5-14, and especially conclusively after the mediation event of 9-4-16, and up to the present, the defendants have engaged in continued and unrelenting violation of the plaintiff's Constitutional Civil Rights and have violated Federal Laws in terms of ethnic/racial discrimination, equal protection under the law, anti-conspirational, and anti-retaliation guarantees.  The defendants have since then persisted in retaliating against the plaintiff in that case managers have diligently looked for ways to deny authorization for treatment or to pay for delivered services, causing much delay in services delivery to clients and continued infliction of emotional pain and suffering on the plaintiff and clients both.  Clients, especially those Hispanic, have been coerced and threatened by defendants' case managers to abandon care from the plaintiff and go elsewhere for services, or risk losing their financial and treatment benefits if they do not.  Client's cases have been "held hostage" and kept from proceeding towards claim resolution and pension unless Dr. Arenas agrees to forego payment for services rendered or cancels legal appeals for payment.  This in spite of no Hispanic bilingual/bicultural psychologist, psychiatrists, or psychiatric nurse practitioners being available to treat them, in the whole State.  The plaintiff has had to obtain courteously complimentary legal assistance in restoring payments and treatment authorizations, which have been successfully obtained only after months of delay and undue emotional and financial distress.  L&I case managers have held the plaintiff to a more scrutinized review of chart notes and clinical assessments, in an unequal manner, compared to his majority culture colleagues, and have demanded retributory repayment for services paid, again requiring legal appeal.  So-called "independent" medical evaluators in response to L&I case managers' exhortations, have stated in their reports that the plaintiff's work "is useless" (Mark Koenen, MD) or of no value to his Hispanic clients, and have recommended and in effect directed that his treatment be terminated or transferred to other providers, without addressing any cross-cultural or discriminatory issues, biases, or deficiencies involved in their opinions, or that there are no other available Hispanic, bilingual psychologists available to care for them.  As recently as a few months ago (10-4-18), evidence has been secured that shows non-Hispanic, majority culture independent contracted providers are still being paid for submitting

Arenas v. Inslee, et al. - Civil Rights Complaint                                        15 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

their charting/billing forms in the manner that was pre-textually used to egregiously and outrageously adversely harm and impair, unnecessarily, over 4 years ago and up to the present, the plaintiff. This failure to address the matter supports the plaintiff's position, along with other actions by the malicious and oppressive discriminative punishment.

4.17    The plaintiff's confidence and trust in the State of Washington, especially the State legal system, proceeding in a fair, unbiased, sincere, honest, and just way was eroded and precluded by the way the BIIA and the OAG acted in regards to the plaintiff's efforts to include vital information in his defense against L&I in those proceedings, and especially how the OAG and the DRB disingenuously and fraudulently blatantly altered the plaintiff's cited Tort of Outrage cause of action in order to dismiss it, among other similar actions, were irreparably harmed and negated. As such, in spite of the defendants having violated State laws against racial discrimination, conspiracy, retaliation, and other relevant statutes, the plaintiff believes that they have demonstrated a tendency towards debilitation of their legal responsibility and a proclivity towards constructive conspirational intent to delay, obstruct, conceal, and deny his pleadings. Relatedly, he has chosen to bypass the State judicial system and exclusively submit his present legal actions in Federal court.

4.18    The Office of the Attorney General, one of the defendants, as already noted, on 3-1-18 retaliated against Dr. Arenas for reporting these non-Hispanic providers accordingly, as had been previously requested by the defendants, by referring him to his licensing board and to Federal authorities for investigation and negative consequences. Investigators for the defendants have called and requested copies of chart notes they were found to already possess, announcing that the plaintiff was being investigated, only to have another agent call later and excuse the incident and state that there is no investigation going on. In legal depositions on behalf of injured Hispanic workers, while in proceedings, the plaintiff has been harassed by the defendants' Assistant Attorney General about his involvement with them in their efforts to organize and challenge the defendants' discriminative ways, even to the point of questioning related posters on the walls at the plaintiff's office perceived as pertaining to that. Those actions, among others, are believed by the plaintiff to evidence continuing retaliation against him for having complained about and asserting being unequally and discriminatively treated, for having submitted his Tort of Outrage against the defendants, and for his support and advocacy for injured Hispanic workers.

4.19    The role of Mr. Johnston and Ms. Salvoni, and even Mr. LaPalm's in the plaintiff's alleged conspirational discriminative and oppressive actions by the defendants appears to have been incongruous with those actions. Their role in supporting Dr. Arenas to seek just consideration for what he, the Hispanic community has been going through was indispensable, and was without a doubt the reason why L&I mediated the plaintiff's

Arenas v. Inslee, et al. - Civil Rights Complaint                                        16 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

audit issue, however late and limited it was. They were quite genuine and empathetic in their interactions with the plaintiff and his family and also especially towards the many injured Hispanic workers they came into contact with in their civil rights work. Ms. Montana, actually, after the mediation event, even helped the plaintiff to develop a proposal for a culturally/linguistically relevant pilot program to better serve Hispanic injured workers. The proposed program was, however, completely and unresponsively dismissed by Gary Franklin, MD, the L&I Medical Director as not necessary and duplicative, with no relevant credible substantive or supportive evidence cited to support his action. Of distressing interest shortly after that, it was discovered by the plaintiff that Dan Johnston had resigned his position with L&I, and that Montana Salvoni was reassigned within the L&I system. They abruptly and up to the present completely ceased interacting and communicating with the plaintiff. The rumor circulating through L&I was that they had been sanctioned and punished for their support for the plaintiff and for Hispanic injured workers. Ernie La Palm, the Deputy Director of L&I then also retired, without having followed-up with the plaintiff as agreed-to in mediation. The extent to which these particular defendants were coerced, pressured, or threatened by the others remains unanswered, as contact was lost with them. What is clear is that a seemingly positive outcome to the whole matter at hand was lost when they were no longer involved. To this day, no one at L&I has followed-up with the mediation agreement points, and certainly not with any efforts to make the plaintiff whole again. And actually, as already noted, the defendants have not all responded to the plaintiff's assertions of discrimination and other associated issues as asserted in the present legal action. After numerous letters to the defendants relatedly, not one affirmative response has been made, none, period. Mr. Johnston, Ms. Salvoni, and even Mr. LaPalm are listed as defendants, primarily because of their role as witnesses, although participants nonetheless, albeit to what extent remains unclear.

## V.  STATEMENT OF DAMAGES

5.1     As a direct and proximate result of the discriminative intentional and/or negligent, acts or failure to preventively act, by the defendants, the plaintiff, individually and as a contracted entity, sustained violations and deprivation of his First and Fourteenth Amendment Constitutional Rights, involving the rights to be free from racial and ethnic discrimination; to be relatedly free to exercise and enjoy his rights, privileges, and immunities as so secured; to be relatedly treated equally as other citizens and so-entitled individuals; to be free from arbitrary and oppressive government actions and actors, whether as individuals acting under the color of law or otherwise; to be free to enjoy all the rights and privileges afforded to all public contracted entities; to be free to practice his profession from a linguistically and culturally relevant perspective and from restraint of trade accordingly; to be free from being subjected to a hostile and discriminatory environment; to be free from being defamed and or libeled and

Arenas v. Inslee, et al. - Civil Rights Complaint                                         17 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

slandered, or otherwise from being negatively or professionally portrayed; to be free from governmental or individual color of law conspiratorial actions; to be free from government interference and impediment in petitioning the government for redress of grievances; to be free from outrageous intentional infliction of emotional pain and suffering; to be free from arbitrary financial oppressive actions; and to be free to enjoy any and all other rights and privileges as guaranteed by the Constitution of the United States.

5.2    The plaintiff was and has continued to be intentionally financially and professionally impaired and harmed, and personally emotionally pained and made to suffer by the Defendants' discriminative and illegal actions, and the plaintiff is thereby entitled to financial and procedural restitution and compensation, and professional and personal restoration otherwise.  No physical injuries are alleged by the plaintiff in the present suit.

## VI.  CAUSES OF ACTION

6.1    Based on the above asserted violations of Dr. Arenas' constitutional civil rights, it is contended that the defendants, as individuals, violated established federal laws against racial/ethnic discrimination, conspiracy, retaliation, and as otherwise asserted, and relied upon their misuse and abuse of their positions as individuals with access to the awesome and overwhelming power of the State, in a willful, intentional, arbitrary, and malicious attempt to impair, punish or otherwise discourage or eliminate him from continuing to provide bilingual and biculturally-relevant psychological treatment to Hispanic injured workers, and have continued to do so up to the present.  Specifically, all of the defendants violated the following federal laws and otherwise offended against the plaintiff in terms of the following causes of action:

6.2    42 U.S.C. 1983, by intentionally racially discriminating and causing Dr. Arenas, as an individual and independently contracted Hispanic psychologist, to be subjected to unequal deprivation and denial of exercising his protected civil rights, privileges, and immunities as secured by the federal constitution and laws through their actions taken under the color of law, having harmed and impaired him and otherwise causing him outrageous emotional pain and suffering relatedly; beginning at an initiatory point and in continuing violation, including via retaliation motivated by the plaintiff having voiced and otherwise asserted a challenge to discriminative practices and policies by the defendants towards him and injured Hispanic workers in support thereof;

6.3    42 U.S.C. 1981, by intentionally and under the color of law, racially discriminating against Dr. Arenas, individually and as a contracted independent Hispanic psychologist, denying him full and just participation, in an unequal manner, with race/ethnicity being

Arenas v. Inslee, et al. - Civil Rights Complaint                                    18 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

a substantial and motivating factor, in the making and enforcing of a contract and enjoyment of all benefits, privileges, terms, and conditions of benefit therefrom; through an intentionally excessive and egregious, unfair, and arbitrary adverse action directed at impairing, restraining, and eliminating his involvement in treating injured Hispanic workers who have traditionally been underserved and have had no other related linguistically and culturally-relevant resources; which was facilitated by the establishment of a conspiratical cabal that directed the creation, promotion, and maintenance of a retaliatory discriminatory, and hostile animus in the service of maliciously harassing him in retaliation for asserting and exercising his rights and protecting himself against efforts to impair him and for having harmed and impaired him so, and otherwise having deliberately inflicted outrageous emotional pain and suffering accordingly, which has continued to the present;

6.4   42 U.S.C. 1985, by conspiring under the color of law to interfere with and otherwise deprive, directly or indirectly, Dr. Arenas of his civil rights and equal protection thereof and enjoyment of equal privileges and immunities under the laws, as outlined above or elsewhere in the record of the present actions, and having intentionally and deliberately harmed and impaired him financially and personally, and otherwise caused him outrageous emotional pain and suffering, and which has continued to the present;

6.5   18 U.S.C. 241, by conspiring under the color of law to emotionally injure and harm, oppress, threaten, intimidate, impair, and otherwise deprive Dr. Arenas of his full right to participate in the free exercise and enjoyment of privileges secured to him by the Constitution and laws of the United States and having done so intentionally and deliberately, that has financially and personally harmed and impaired him, and which has continued to the present; with a conspiracy component (possibly involving 18 USC 3282) to cover-up and conceal the offenses by intentionally and deliberately not responding to the plaintiff's pleadings for just consideration, effectively financially and resourcefully preventing him from obtaining legal representation by bankrupting him, in an effort to toll relevant statutes of limitation;

6.6   18 U.S.C. 242, by willfully depriving Dr. Arenas of enjoyment of his full civil rights, privileges, and immunities secured and protected by the Constitution and laws of the United States, under the color of law by acting both within and without or beyond the bounds or limits of their lawful authority, while purporting or pretending to act in the performance of their official duties; and having done so deliberately and intentionally, as well as conspiratially, in unequally harming and impairing him financially and personally, and otherwise causing him outrageous emotional pain and suffering, which has continued to the present;

Arenas v. Inslee, et al. - Civil Rights Complaint                                                      19 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

6.7     42 U.S.C. 2000d and 18 U.S.C. 245, by willfully and intentionally discriminating under the color of law, against Dr. Arenas, through intimidation and interference in the full exercise and enjoyment of his constitutional rights and privileges, and otherwise participating in related protected activities and entitlements, on the basis of ethnic/racial status, as a participant in a program or activity that receives Federal funds, which has continued to the present;

6.8     Tortious Interference With a Business Contract, by knowingly, willfully, and intentionally, under the color of law, subjecting Dr. Arenas to "bureaucratic terrorization" that was directed at eroding, impairing, and otherwise harming Dr. Arenas' psychological practice in a racially discriminative and unequal manner in order to adversely affect, damage, or eliminate his services availability to the Hispanic injured community, which has continued to the present;

6.9     Outrageous Government Action, acting under the color of law, by acting in a way which was arbitrary, discriminative, oppressive, abusive, and malicious in its intent and counter to what the defendants profess and are bound by law to be aware of, prevent, and remedy, and which was and continues to be an injustice and moral affront to the Hispanic community, and as well as being professionally and personally damaging and impairing to the plaintiff;

6.10    Creation of an Antagonistic and Malicious Discriminative and Retaliatory Animus and Environment which was directed against the plaintiff, under the color of law, within their respective and colluding bases of State power, in order to deflect from, evade, self-justify, and conceal or cover-up their outrageous unequal treatment, and to influence others to join their efforts relatedly or keep some within their ranks, and in other spheres of influence, from preventing or challenging their actions, that has defamed and negatively stigmatized the plaintiff personally, socially, and professionally, and thereby relatedly impaired and harmed him, which has continued to the present;

6.11    42 U.S.C. 1986, by, under the color of law, having knowledge of wrongs conspired to be done, or were to be committed; and having power to prevent or aid in preventing such, neglected or refused to do so, when reasonable diligence could have prevented them and did not, and still have not, as those actions continue to be at play, affecting the plaintiff in a continuous racially discriminative and unequal manner.

6.12    Engaging, under the color of law, in racial harassment that has victimized and stigmatized the plaintiff on the basis of race/ethnicity, and interfered with and harmed him in his employment and livelihood, and by causing him outrageous emotional pain and suffering, including by creating and supporting an intimidating, hostile, and

Arenas v. Inslee, et al. - Civil Rights Complaint                                    20 of 23
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

offensive, as well as oppressive participatory environment, which has continued up to the present; and by

6.13   Continued, as described in the Continued Violations Doctrine, and other ongoing and still unknown or unrevealed unconstitutional and discriminatory unlawful violations against the plaintiff from 9-3-14 up to the present, and into the future in spite of persistently having been fully informed, educated, and otherwise notified of the oppressive, arbitrary, and professionally and personally harmful nature of their actions, being implored to amicably and justly address and remedy the various violations and offences against him, and failing to address or even at all respond to such, in a conspirational manner with the intent to deflect and conceal or cover them up, and thereby lapse relevant statutes of limitations, resultantly denying, under the color of law, the plaintiff's abilities to become aware of and exercise his constitutional civil rights.

## VII.  JURY TRIAL DEMAND

7.1   The Plaintiff hereby demands a jury trial in this matter.

## VIII.  PRAYER FOR RELIEF

8.1   The plaintiff pleads and prays for court adjudication and judgement against the defendants in the form of monetary compensation and awards for consequential loss of income, loss of savings, other incidental damages, lost opportunities, and mental anguish/emotional distress, pain, and suffering; punitive damages; and judicial injunction, as preliminarily indicated below:

8.2   $800,000.00 in loss of income over 4 years time, and continuing in a pro-rated manner up to the present and until conclusion of the ongoing legal action, at an estimate of $200,000.00 per year, until claim resolution;

8.3   $1,000,000.00 in loss of life insurance coverage;

8.4   $80,000.00 in loss of retirement savings;

8.5   $100,000.00 in loss of other personal property;

8.6   $1,000,000.00 in loss of opportunities;

8.7   $1,000,000.00 in emotional pain and suffering

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

21 of 23

8.8   punitive financial damages as determined by the court;

8.9   Compensation for pain and suffering experienced by the client's spouse and son, as determined by the court and jury, if legally possible, at an amount to be established at claim resolution;

8.10   judicial orders and oversight for the defendants to cease and desist their adverse actions against the plaintiff, and to honor and abide by the federal and state laws as pertains to remediating racial/ethnic discriminatory arbitrary and oppressive bureaucratic and individually-undertaken (under color of law) practices and acts, and to correct such as necessary to comply relatedly;

8.11   judicial orders and oversight for the defendants, L&I specifically, to contract with the plaintiff as a cross-cultural consultant for four years, at the payment rate of $600.00 per hour, 10 hours a week, for 10 months per year for a minimum of 4 years, or as needed beyond but not less than these basic stipulations, to aid L&I in remedially addressing the issues presented in the current specified judicial pleadings, and otherwise to reform their bureaucratic and medico-legal procedures and policies towards being more culturally and linguistically relevant, and non-discriminatory accordingly;

8.12   judicial orders and oversight for the defendants, L&I specifically, to establish, promote, and/or support the development of and revision of present practices, policies, and regulations, and services towards becoming culturally and linguistically relevant, non-discriminatory, and non-oppressive, which would include the hiring of minority bilingual and bicultural medical and psychological services providers and consultants, and the funding of related specialized pilot, demonstration, and actual programs and clinics.

## IX.  CERTIFICATION

9.1   Under Federal Rule of Civil Procedure 11, by signing below, I certify o the best of my knowledge, information, and belief that this complaint:  (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentious have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the compliant other complies with the requirements of Rule 11.

9.2   I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net

22 of 23

Dated:  April 20, 2019

Signed:
Plaintiff:  Silverio Arenas, Jr., Ph.D.

Arenas v. Inslee, et al. - Civil Rights Complaint
Silverio Arenas, Jr., Ph.D. Pro Se
P.O. Box 306, Mount Vernon, WA 98273
(360) 661-6126
silverioarenas@comcast.net